UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DOROTHY GILLESPIE, an individual,

        Plaintiff

v.                                     Civil Action No. 2:09-0120

CUNA MUTUAL GROUP LONG TERM DISABILITY
INSURANCE POLICY, a Wisconsin Employee
Benefit Plan; CUNA MUTUAL INSURANCE
SOCIETY, a Wisconsin Corporation; and
DOES 1 through 10, inclusive,

        Defendants


<u>MEMORANDUM OPINION AND ORDER</u>


        Pending are cross motions for summary judgment filed by plaintiff Dorothy Gillespie and defendant CUNA Mutual Insurance Society ("CUNA"), each filed on September 21, 2009.


I.


        Plaintiff is a West Virginia resident formerly employed as the chief operations officer of West Virginia Public Employees Credit Union.  (Compl. ¶ 1).  At the Credit Union, her job responsibilities included mostly non-physical work such as "developing revenue plans, developing revenue trend analysis, oversight of accounting functions, and reporting financial data

1

to the directors."  (Def's. Mem. 3; AR 443).  According to her

job description, plaintiff was required to sit five hours, stand

two hours, and walk one hour per day, as well as lift or carry up

to 20 pounds no more than two and a half hours per day.  (Def's.

Mem. 3; AR 444).  While an employee of the Credit Union,

plaintiff was covered under its employee benefit plan

administered by CUNA, including CUNA's Group Long-Term Disability

Insurance Policy ("Plan").  (Compl. ¶ 6; Def's. Mem. 3).

    The Plan gives CUNA the sole authority to manage the

long term disability policy, to administer claims and to

interpret the policy.  (AR 3).  CUNA has the discretionary

authority to determine eligibility for entitlement to benefits.

(<u>Id.</u>).

A. Plan Language

    Section 4.1 of the Plan sets forth the long term

disability benefit:

> We will pay you a Monthly Benefit after the end of the
> Elimination Period[1], when We receive proof that

---

[1]The Elimination Period selected by the Credit Union was 90
days.  (AR 87).

2

> 1. You are Totally Disabled or Partially Disabled
> due to Sickness, Injury, Mental/Nervous Disorder,
> Substance Abuse, or Subjective Disorder; and
> 2. You require the regular care and attendance of
> a Physician for Treatment in connection with the
> Totally Disabling or Partially Disabling
> condition.  The Treatment must be provided by a
> Physician certified to treat Your specific
> condition and must be aimed at maximizing recovery
> and return to work, when possible; and
> 3. You are in compliance with the Treatment plan
> outlined by Your Physician; and
> 4. Your Total Disability or Partial Disability
> started while You were insured under the Policy
> and results in a loss of income from employment
> for You.

(AR 25).

The definition of "Total Disability" is set forth in

section 1.1:

> **Total Disability or Totally Disabled** means during the
> Elimination Period [90 days] and the next 24 months of
> disability You are unable to perform, with reasonable
> accommodation, all of the Material and Substantial
> Duties of Your Own Occupation because of an Injury,
> Sickness, Mental/Nervous Disorder, Substance Abuse, or
> Subjective Disorder.
>
> After 24 months of benefits have been paid, it means
> because of an Injury, Sickness, Mental/Nervous
> Disorder, Substance Abuse, or Subjective Disorder You
> are unable to consistently perform, with reasonable
> accommodation, all the Material and Substantial Duties
> of any gainful occupation for which You are or could
> reasonably become qualified by training, education or
> experience.

(AR 18).

3

B. Background

Plaintiff is now 63 years of age.  Since at least 1992, she has experienced bone and joint pain, and since at least 1998, she has experienced pain in her stomach and shoulder.  (Pl's. Mem. 3).  She has also complained of muscle spasms, fatigue and weight loss.  (AR 197, 200).  Her medical records indicate that she has smoked one pack of cigarettes per day for forty years. (AR 200).

Plaintiff was treated by Dr. Arvind Viradia, M.D. from February 12, 1992, to at least July 10, 2000.  (AR 240).  Dr. Viradia noted that she complained of pain in her joints and bones, tiredness, palpitations, wheezing problems and breast lumps.  (Id.).  On January 19, 1995, he diagnosed plaintiff with fibromyalgia and gastroesophegael reflux disease.  (Id.).  During the course of her visits with Dr. Viradia, plaintiff tested normal in a bilateral leg study, mammography, stress test, ultrasound of right upper quadrant and gastroscopy.  (Id.). Plaintiff's pain increased, and by July 31, 2003, she was unable to continue working for the Credit Union.  (Pl's. Mem. 3-4; Def's. Mem. 3).  The record indicates her last day of work was August 29 or August 30, 2003.  (AR 402, 64).

4

Plaintiff visited Dr. Kuryla, her treating physician since at least 2003, regularly.  (AR 230).  She complained to Dr. Kuryla of low back pain, and in October 2003, Dr. Kuryla diagnosed plaintiff with muskuloskelatal low back pain, a slight bulging disc and minimal osteoarthritis.  (AR 239, Pl. Compl. Ex. B).  In November 2003, Dr. Kuryla recommended she begin physical therapy and noted that she was limited in standing, walking, sitting, and lifting.  (AR 239).  At that time he did not recommend a functional capacity evaluation.  (Id.).  Dr. Kuryla referred her to Dr. Arvind Shah for blood work, and on July 30, 2004, she had several lab tests done.  (AR 200).  Dr. Shah noted that plaintiff had a high white blood cell count, but he opined that she did not have a myeloproliferative disorder.  (AR 200).

Between 2003 and 2005, plaintiff was referred to two rheumatologists by Dr. Kuryla for additional treatment: Dr. Hornsby and Dr. Howard.  (AR 227, 332).  Dr. Hornsby saw her four times as of March 30, 2005, and diagnosed her with osteoarthritis and possibly a fibromyalgia component.  (AR 227).  This diagnosis was based on plaintiff's representations of pain.  (Id.).  Dr. Hornsby's evaluation for inflammatory arthritis was negative.  (Id.).  In January 2004, Dr. Howard concluded that plaintiff had a chronic problem with fibromyalgia and that she appeared to be

5

mildly depressed.  (AR 241).

C. Plaintiff's Claim for Long Tern Disability Benefits

On November 17, 2003, plaintiff filed a claim for long-term disability ("LTD") benefits under the Plan, asserting that she was unable to work because of "chronic back pain and weakness in legs."  (AR 391).  Dr. Kurlya stated in a disability form dated October 13, 2003, that plaintiff had arthritis, and "[m]oderate limitation of functional capacity" and that she was "capable of clerical/administrative (sedentary) activity."  (AR 442).  Dr. Kurlya also noted plaintiff had no mental impairments. (Id.).  In a letter dated September 2, 2004, Dr. Kuryla stated that plaintiff's fibromyalgia has rendered her unable to work since August 2003.  (AR 276).

In investigating plaintiff's claim, CUNA asked Dr. Michael Borkowski, M.D., to review her medical records and report on whether she suffered from a condition that prevented her from performing the duties of her occupation. (Def.'s Mem. 4).  After reviewing her medical records, Dr. Borkowski concluded that plaintiff was not disabled from her occupation, and that her decision to quit her job and retire was volitional.  (AR 438-39).

6

Dr. Borkowski noted that plaintiff has "minor musculoskeletal complaints with episodic flare ups" but that these conditions can be treated with short work absences.  (AR. 439).

CUNA denied plaintiff's claim on January 19, 2004, October 12, 2004, April 7, 2005, and January 18, 2006.  (AR 479, 454, 421, 407).

1. First Appeal

Plaintiff appealed CUNA's first denial by letter dated October 6, 2004.  (AR 459).  In her letter, plaintiff stated that her position demanded more strenuous physical activity than clerical work and that it was wrongly classified as "sedentary to light work."  (Id.).  Plaintiff states,

As COO, I worked in excess of 10 hours per day and was on call 24/7.  In the event of a building alarm, an ATM malfunction, or any other problem I was required by my supervisor to resolve these errors.  I climbed up ladders or step stools to retrieve items.  I had to lift computer equipment, and boxes of computer paper. I functioned as the information technician connecting computers and networks requiring me to be in a stooped position.  I spent many hours on the computer and the telephone holding a telephone on my shoulder with my head resolving member problems or with a vendor resolving computer problems.  The State Credit Union during my term of employment never discussed opportunities as a company to address potential health issues for potential musculoskeletal disorders in the work place.

(AR 459).

In her letter, plaintiff also refers to a January 30, 2004, letter from Dr. Howard and a September 2, 2004, report by Dr. Kuryla.  (Id.).  In Dr. Howard's letter, he states that plaintiff suffers from chronic fibromyalgia, mild depression and mild osteoarthritis "that is of minimal significance at the present time."  (AR 332).  In his report dated September 2, 2004, Dr. Kuryla wrote that plaintiff suffered from fibromyalgia, which "rendered her unable to perform many activities of daily living, and, unable to tolerate physical activity, specifically working, since August 2003.  .  .  .  She was advised not to return to work if financially able to do so."  (AR 437).

CUNA sent plaintiff a letter on October 12, 2004, upholding its decision to deny plaintiff's claim, after considering her letter and the information she provided.  (AR 454).  In its letter, CUNA stated that it lacked medical documentation supporting the conclusion that plaintiff is disabled.  (Id.).

2. Second Appeal[2]

        In the memorandum supporting its motion for summary
judgment, CUNA states that after "Dr. Kuryla submitted additional
records to CUNA," it further considered plaintiff's claim for
disability benefits.  (Def.'s Mem. 5).  In February, 2005, CUNA
contracted with a medical consulting firm, Behavioral Medical
Interventions ("BMI") to review plaintiff's claim.  (Id. at 5).
BMI referred her claim to Dr. Mark Johnson and Dr. Barbara Gibson
for review.  (Id.).  On March 1, 2005, Dr. Johnson submitted a
nine page report reviewing plaintiff's medical records and
evaluating her claim.  (AR 428-36).  Dr. Johnson found that
plaintiff was not impaired from her occupation.  (AR 434-35).

        On March 30, 2005, Dr. Gibson submitted a report to BMI
detailing telephone consultations she had with Dr. Kuryla on
March 21, 2005, and Dr. Hornsby on March 22, 2005.  (AR 425-27).
Dr. Gibson related that Dr. Kuryla could not state that plaintiff
was totally disabled, and that any restrictions he had
recommended in the past were based solely on plaintiff's
description of her symptoms.  (AR 425).  Dr. Gibson notes that
plaintiff reported benefitting from physical therapy upon

        [2]The record is not entirely clear as to whether this was an
appeal or, instead, a voluntary review initiated by CUNA.

completion of the therapy, but then three months later plaintiff denied that physical therapy was effective. (Id.).

In their telephone conversation of March 22, 2005, Dr. Hornsby told Dr. Gibson that she had seen plaintiff on four occasions prior to their conversation. (AR 426). Dr. Hornsby confirmed that plaintiff's primary diagnosis was osteoarthritis, but that she could not rule out fibromyalgia. (Id.). Dr. Hornsby further informed Dr. Gibson that there were new findings of osteoporosis and juxta-articular arthritis in plaintiff's feet, and that Dr. Hornsby planned on pursuing a more thorough evaluation for an underlying inflammatory arthritis. (Id.). Dr. Hornsby did not specifically evaluate plaintiff for disability, but she represented to Dr. Gibson that she does not feel that fibromyalgia is disabling for most types of work, and that plaintiff did not appear to be incapable of light work. (Id.).

Dr. Gibson concluded in her report that the medical records and information from plaintiff's treating physicians do not support a finding that plaintiff is impaired and unable to perform the requirements of her job.

On April 7, 2005, CUNA sent plaintiff a letter upholding the denial of her claim. (AR 421).

10

### 3. Third Appeal

Plaintiff appealed her disability benefits denial again by letter dated October 4, 2005. (AR 189-91). In reviewing her appeal, CUNA consulted with Dr. Robert Petrie. (Def.'s Mem. 6). After reviewing plaintiff's medical records, Dr. Petrie submitted a report to CUNA dated November 23, 2005, in which he concluded that plaintiff is capable of working and that there is minimal evidence of any musculoskeletal impairment. (AR 179). According to an additional report submitted to CUNA by Dr. Petrie on December 13, 2005, Dr. Petrie spoke with Dr. Kuryla. (AR 170). In this conversation Dr. Kuryla informed Dr. Petrie that he believed plaintiff is capable of sedentary work, and that it would be appropriate for her to try to return to work. (Id.). On January 18, 2006, CUNA denied plaintiff's claim for disability benefits once again, citing the facts that no physician ever advised her to cease work and her physicians thought her capable of light clerical work. (AR 408).

Plaintiff thereafter began receiving Social Security disability benefits on June 18, 2007. (Compl. ¶ 19). The Social Security Administration ("SSA") found that plaintiff's disability began on July 31, 2003. Plaintiff initiated this action on February 10, 2009.

III.

        In her motion for summary judgment, plaintiff urges the
court to take into account the conflict of interest arising from
CUNA's dual role as the administrator of the benefits and as the
insurer.  (Pl.'s Mem. 8-10).  Plaintiff argues that the SSA's
determination that she has been disabled since July 31, 2003,
should be adopted by the court because the plan's definition of
"disability" is similar to that of the SSA.  (Id. at 11-12).
Plaintiff also contends that, in the alternative, this case
should be remanded to the plan administrator because CUNA did not
rely on a complete copy of plaintiff's medical records.  (Id. at
13).

        CUNA responds to plaintiff's motion by first stating
that the court should review its decision to deny plaintiff's
claim under the abuse of discretion standard.  (Def.'s Resp. 3).
Defendants further assert that plaintiff's award from the SSA
does not control whether she qualifies for benefits under the
Plan inasmuch as the determination of whether a Plan participant
is eligible for benefits does not depend on the SSA's
determination of the same, and CUNA was unable to take into
account the SSA's decision in its own evaluation of plaintiff's

claim because she was awarded Social Security benefits 18 months after CUNA finally denied her appeal.  (Id. at 5).  In response to plaintiff's argument that this case should be remanded to the plan administrator, defendants contend that any deficiency in plaintiff's lengthy record is the fault of plaintiff for not submitting additional records obtained after review of her claim began and informing CUNA of other physicians she was seeing. (Id. at 8).

CUNA moves for summary judgment on the grounds that, under the abuse of discretion standard, its denial of her claim was reasonable and has compelling evidentiary support.  (Def.'s Mem. at 7-8).  Plaintiff responds by challenging the credibility of CUNA's reliance on BMI and their reviewing physicians.

IV.

The court notes initially that it is the claimant's burden to demonstrate entitlement to benefits under the plan. See Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264, 270 (4th Cir. 2002).

The standard of review for a decision made by an administrator of an ERISA benefit plan generally is de novo. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989);

Bynum v. Cigna Healthcare of North Carolina, Inc., 287 F.3d 305,

311 (4th Cir. 2002); Richards v. UMWA Health & Retirement Fund,

895 F.2d 133, 135 (4th Cir. 1989); de Nobel v. Vitro Corp., 885

F.2d 1180, 1186 (4th Cir. 1989).  Where, however, the plan gives

the administrator discretion to determine benefit eligibility or

to construe plan terms, as here, the standard of review is

whether the administrator abused its discretion.  Firestone, 489

U.S. at 111; Stup v. Unum Life Ins. Co. of Am., 390 F.3d 301, 307

(4th Cir. 2004); Bynum, 287 F.3d at 311.

         Under this standard, a plan administrator's decision

will not be disturbed if it is reasonable, even if the reviewing

court would have come to a different conclusion independently.

See Smith v. Continental Cas. Co., 369 F.3d 412, 417 (4th Cir.

2004); Feder v. Paul Revere Life Ins. Co., 228 F.3d 518, 522 (4th

Cir. 2000). "[A] decision is reasonable if it is the result of a

deliberate, principled reasoning process and if it is supported

by substantial evidence." Ellis v. Metropolitan Life Ins. Co.,

126 F.3d 228, 232 (4th Cir. 1997) (internal quotation marks

omitted).

         A recent alteration of the law in this area is

noteworthy.  In Metropolitan Life Insurance Co. v. Glenn, 128

S.Ct. 2343 (2008), the Supreme Court discussed how a court

14

conducts the review of a benefits determination when the plan administrator operated under a conflict of interest.  Our court of appeals previously accounted for a conflict of interest by way of the modified abuse of discretion standard.  See, e.g., Carden v. Aetna Life Ins. Co., 559 F.3d 256, 259-61 (4th Cir. 2009); Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 358 (4th Cir. 2008).  Following Glenn, "a conflict of interest becomes just one of the 'several different, often case-specific, factors' to be weighed together in determining whether the administrator abused its discretion."  Carden, 559 F.3d at 261 (quoting Glenn, 128 S. Ct. at 2351).  The weight accorded to the conflict "will . . . depend largely on the plan's language and on consideration of other relevant factors."  Id. at 261.

        A nonexclusive recitation of those "other relevent factors" is found in Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan, 201 F.3d 335 (4th Cir. 2000), which directs a reviewing court to consider:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was

> consistent with the procedural and substantive
> requirements of ERISA; (7) any external standard
> relevant to the exercise of discretion; and (8)
> the fiduciary's motives and any conflict of
> interest it may have.

Booth, 201 F.3d at 342-43; Johannssen v. District No. 1-Pacific
Coast Dist., MEBA Pension Plan, 292 F.3d 159, 176 (4th Cir.
2002); see also Lockhart v. UMWA 1974 Pension Trust, 5 F.3d 74,
77 (4th Cir. 1993).

There are compelling reasons for the deferential
standard of review, not the least of which is that it "'ensure[s]
that administrative responsibility rests with those whose
experience is daily and continual, not with judges whose exposure
is episodic and occasional.'"  Brogan v. Holland, 105 F.3d 158,
161, 164 (4th Cir. 1997) (noting no abuse is present if the
decision "'is the result of a deliberate, principled reasoning
process and if it is supported by substantial evidence.'")
(citations omitted); Johannssen, 292 F.3d at 169; Lockhart, 5
F.3d at 77 (noting the "dispositive principle remains . . . that
where plan fiduciaries have offered a reasonable interpretation
of disputed provisions, courts may not replace it with an
interpretation of their own.").

Nevertheless, there are circumstances where a reviewing

16

court will direct an administrator to have another look at a
claim through the device of remand.  The circumstances justifying
a remand, however, are quite exceptional:

> If the court believes the administrator lacked adequate
> evidence on which to base a decision, "the proper
> course [is] to 'remand to the trustees for a new
> determination,' not to bring additional evidence before
> the district court." As we have previously indicated,
> however, "remand should be used sparingly."  Remand is
> most appropriate "where the plan itself commits the
> trustees to consider relevant information which they
> failed to consider or where [the] decision involves
> 'records that were readily available and records that
> trustees had agreed that they would verify.'" The
> district court may also exercise its discretion to
> remand a claim "where there are multiple issues and
> little evidentiary record to review."

Elliott v. Sara Lee Corp., 190 F.3d 601, 609 (emphasis supplied)
(citations and quoted authority omitted); Sheppard, 32 F.3d at
125; Weaver v. Phoenix Home Life Mut. Ins. Co., 990 F.2d at 159
(4th Cir.1993); Berry v. Ciba-Geigy Corp., 761 F.2d 1003, 1008
(4th Cir. 1985) ("Case for remand of benefit termination decision
to pension plan trustees is strongest where plan itself commits
trustees to consider relevant information which they failed to
consider or where decision involved records that were readily
available and records that trustees had agreed that they would
verify.").

17

**V.**

As earlier noted, plaintiff bore the burden of establishing her entitlement to benefits. (AR 25 ("We will pay you a Monthly Benefit after the end of the Elimination Period, when We receive proof that You are Totally Disabled or Partially Disabled . . ..")). Additionally, the parties are in agreement that CUNA is the plan administrator and is vested with the discretionary authority to determine participants' eligibility for benefits. (See Def.'s Mem. 8; Pl.'s Mem. 7-8). Inasmuch as CUNA is responsible for both administering benefits and interpreting the Plan, CUNA is a conflicted administrator.

With respect to Booth, it appears that the factors especially relevant to the parties' dispute are the third, fifth, and eighth factors. Regarding the third factor, "the adequacy of the materials considered to make the decision and the degree to which they support it," plaintiff contends that the administrative record does not contain relevant medical records, specifically her physical therapy records from October 2005 and records from plaintiff's chiropractor, Dr. Paul Casingal. (Pl.'s Mem. 12-14). She further contends that her SSA award, which was not made until June 2007, some 17 months after CUNA's last denial

18

on January 18, 2006, and thus not considered by CUNA, is conclusive evidence of her disability since July 31, 2003.  (Id. at 10-11).  Plaintiff attaches to her motion for summary judgment only her notice of award from the SSA

With respect to the additional medical records mentioned by plaintiff, she submitted her final appeal to CUNA on October 4, 2005, yet she neither submitted the supplemental physical therapy records to CUNA, nor did she inform CUNA that she was being treated by Dr. Casingal.  (Def.'s Resp. 7).  The administrative record reflects CUNA's effort to ensure a complete set of plaintiff's records.  CUNA's reviewing physicians followed up with plaintiff's treating physicians and pursued all avenues of available evidence pertaining to plaintiff's illness.  To the extent plaintiff's October 2005 physical therapy records were material to her claim, plaintiff bore the responsibility of submitting those records to CUNA.

With respect to her SSA award, the scope of the court's review of CUNA's denial is limited to the facts known to CUNA at the time of its decision.  See Elliott v. Sara Lee Corp., 190 F.3d 601, 608 (4th Cir. 1999) ("When a district court reviews a plan administrator's decision under the abuse of discretion standard, 'an assessment of the reasonableness of the

19

administrator's decision must be based on the facts known to it at the time.'") (quoting <u>Sheppard v. Enoch Pratt Hospital</u>, 32 F.3d 120, 125 (4th Cir. 1994)).  Plaintiff urges the court to find that because she was awarded SSA benefits dating back to July 31, 2003, "the Plan requires that she should be awarded disability benefits from that day forward."  (Pl.'s Mem. 12). However, because the SSA award was not made until June 18, 2007, the court is unable to find that CUNA abused its discretion in failing to consider evidence that was unavailable at the time of its decision.  See <u>Mote v. Aetna Life Ins. Co.</u>, 502 F.3d 601, 610 (7th Cir. 2007) (finding plan administrator was not estopped from asserting that plaintiff was not totally disabled "merely because" SSA found plaintiff to be disabled eight months after the administrator denied her benefits); <u>Tegtmeier v. Midwest Operating Engineers Pension Trust Fund</u>, 390 F.3d 1040, 1046 (7th Cir. 2004) (finding proper the defendant's decision not to reconsider its denial of plaintiff's claim for disability benefits after an SSA award was made and when the Plan did not tie benefits to an SSA determination).

Rather, the court may consider whether CUNA's inability to consider the SSA award at the time of its decision amounted to a lack of adequate evidence warranting remand.  See <u>Berry v.</u>

Ciba-Geigy Corp. 761 F.2d 1003, 1007 (4th Cir. 1985) ("If the court believed the administrator lacked adequate evidence, the proper course was to remand to the trustees for a new determination, not to bring additional evidence before the district court." (quotations omitted)).  As noted above, the circumstances justifying remand are exceptional and most appropriate where the Plan is committed, but fails, to consider certain relevant information.  See Elliott, 190 F.3d at 609.

        In the language of the Plan, CUNA did not commit itself to consider an SSA award in making its determinations, nor is an SSA determination binding on a plan administrator.  Elliott, 190 F.3d at 607.  The only document relating to the SSA's determination of plaintiff's disability is the notice of award attached to plaintiff's memorandum.  This notice is unaccompanied by any objective findings or bases for her disability, and thus is of limited evidentiary value.  Still, the fact that the SSA determined plaintiff to be disabled is of some evidentiary value; however, in light of the sufficiency and near unanimity of the evidence considered, the SSA's determination does not render CUNA's decision unreasonable or the evidence it relied upon inadequate.

        Inasmuch as the evidence relied on by CUNA was

21

sufficient to make a reasonable determination of plaintiff's
eligibility for benefits, remand to review further evidence is
inappropriate.  For the reasons stated, the third <u>Booth</u> factor
weighs in favor of CUNA's determination.

Regarding the fifth factor, "whether the decisionmaking
process was reasoned and principled," plaintiff argues that CUNA
rejected the opinions of her treating physicians in favor of the
opinions of CUNA's reviewing physicians.  (Pl.'s Resp. 2).
However, the record indicates that plaintiff's treating
physicians expressed doubt as to plaintiff's disability.  On
September 2, 2004, Dr. Kuryla stated in a letter that plaintiff's
fibromyalgia renders her "unable to tolerate physical activity,
specifically working," because she experiences pain and extreme
fatigue.  (AR 276).  Yet, in a phone conversation with Dr. Petrie
on December 12, 2005, Dr. Kuryla represented that he saw
plaintiff once every one to two months, and that in his opinion
plaintiff was capable of sedentary work.[3]  (AR 170).  On January

---

[3]Throughout the record, plaintiff's job is classified as
sedentary to light clerical work, a classification that plaintiff
challenges.  The Fourth Circuit has not adopted a specific
definition for sedentary or light work, but the Second Circuit
has adopted the SSA's definition of those terms in ERISA cases.
<u>See</u> <u>Connors v. Conn. Gen. Life Ins. Co.</u>, 272 F.3d 127, 136 n. 5
(2d Cir. 2001).  The court finds it appropriate to accept the
SSA's definitions of sedentary or light work as well.
Consequently, sedentary work requires occasionally walking,

30, 2004, Dr. Howard noted plaintiff's fibromyalgia and stated that her mild osteoarthritis "is of minimal significance."  (AR 332).  Dr. Howard further stated that plaintiff must increase her activity level with movements such as stretching, exercising, and generally improving her fitness level.  (Id.).

There are further discrepancies regarding plaintiff's disability in the record.  The first instance in the record of plaintiff setting forth the details of her disability is a form she completed when she initially filed for disability benefits on November 17, 2003, in which she described her disability as chronic back pain, weakness in legs and an inability to perform "repetitive motions."  (AR 391).  Plaintiff has since added to her symptoms relating back to that period, asserting in her memorandum supporting her motion for summary judgment that she suffered from stomach and shoulder pain and disabling chronic fatigue and asserting in her reply that her medications also contribute to her disability.  (Pl.'s Mem. 2-3, 12; Pl.'s Rep. 5-6).

---

standing and lifting and carrying 10 pounds.  Light work involves sitting most of the time, but also requires a good deal of walking and standing, frequent lifting or carrying up to 10 pounds, and some pushing and pulling of arm and leg controls.  20 C.R.F. §§ 404.1567(b).  Even accepting plaintiff's own description, her job does not appear to fall outside of the boundaries of sedentary to light work.  See infra pp. 7-8.

Additionally, in Dr. Howard's letter of January 30, 2004, regarding a recent visit with plaintiff, he stated that plaintiff was not convinced of his suggestion that she was mildly depressed and that she declined antidepressants.  (AR 332). Plaintiff now argues that she has suffered from depression, among other symptoms, since July 31, 2003.  (Pl.'s Mem. 12).  The inconsistencies in the record, along with plaintiff's physicians' doubts as to her inability to perform sedentary work support the reasonableness of CUNA's decision.[4]

Plaintiff contends that it was an abuse of discretion for CUNA to deny plaintiff's claim without an independent medical examination to evaluate her objective limitations and subjective complaints of pain.  (Pl.'s Rep. 3-4).  This argument is unpersuasive.  The Plan permits CUNA to require plaintiff to submit to a medical examination at CUNA's expense.  (AR 20). However, it is common for administrators to rely upon the opinions of non-examining, independent medical professionals in

---

[4]In her reply, plaintiff also quotes an email from a CUNA employee to CUNA's Claims Specialist, in which the employee asserts support for plaintiff's position, as proof that CUNA abused its discretion in denying her benefits.  (Pl.'s Rep. 2). This evidence does not controvert CUNA's ultimate determination, based on plaintiff's medical records and independent reviews thereof.

the benefits determination process.  An independent examination was particularly unnecessary here, where there was significant support based on statements of plaintiff's own physicians for CUNA's determination that she did not satisfy the Plan's disability definition.[5]

Lastly, regarding the eighth Booth factor, "the fiduciary's motives and any conflict of interest it may have," the court has noted that a conflict of interest is present. CUNA's denial of plaintiff's benefits appears to have not been influenced by this conflict, as the record supports CUNA's decision that plaintiff does not satisfy the Plan's definition of disability.  Plaintiff argues that the consulting companies CUNA employed to review plaintiff's claims are "hired guns used by

_____

[5]Plaintiff compares her case to Payzant v. UNUM Life Ins. Co. Of America, 402 F.Supp.2d 1053 (D. Minn. 2005), in support of her contention that CUNA abused its discretion in denying her claim by failing to evaluate her subjective complaints of pain. (Pl.'s Rep. 4-5).  Payzant is distinguishable from this case, and thus of little assistance to plaintiff's argument, for the following reasons.  Unlike CUNA, the administrator in Payzant failed to speak with Payzant's primary treating physician; Payzant's physicians consistently opined that she was disabled and her employer determined that she was unable to continue to work; Payzant's physicians requested a functional capacity evaluation to evaluate her full potential; Payzant's subjective complaints did not contradict her medical records; and Payzant submitted to the administrator objective documentation of her fibromyalgia diagnosis.  Id. at 1062-64.

unscrupulous employers and insurance companies to deny people disability benefits." (Pl.'s Resp. 3). Plaintiff goes on to complain that, aside from their motives in being paid, "we know little about the physicians conducting the reviews because discovery is so limited in ERISA." (Id.).

Plaintiff's arguments relating to conflict of interest are unpersuasive for three reasons. The court notes first that CUNA's retained physicians did not produce opinions that differed significantly from plaintiff's physicians. Second, insofar as plaintiff claims that CUNA's retained physicians are unfairly biased because they have an interest in producing an opinion that is unfavorable to her, the same might be said for plaintiff's treating physicians in that they may have an interest in producing a favorable opinion and keeping plaintiff as a patient. Finally, the curicula vitae for CUNA's reviewing physicians are included in the record and contain extensive information on their acceptable levels of education, certification and specialties. (AR 145-53).

For the above reasons, CUNA's decision to deny plaintiff's claim for disability benefits was reasoned and principled. Plaintiff has failed to demonstrate an abuse of discretion.

26

VI.

Based on the foregoing discussion, it is ORDERED as follows:

1. That defendant's motion for summary judgment be, and it hereby is, granted;

2. That plaintiff's motion for summary judgment be, and it hereby is, denied; and

3. That this action be, and it hereby is, dismissed.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: May 21, 2010

John T. Copenhaver, Jr.
United States District Judge